UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cause No. 1:18-CR-63-HAB |
| | ) | |
| JEFFREY J. MORIARITY | ) | |

**OPINION AND ORDER**

Defendant was sentenced to nearly thirty years for dealing narcotics. He now moves to vacate that sentence based on ineffective assistance of counsel. (ECF No. 131). Defendant's motion is fully briefed (ECF Nos. 140, 143, 145) and ready for ruling.

**I.     Factual and Procedural Background**

In April 2018, law enforcement received a tip that significant drug activity was occurring at Defendant's home. Two trash pulls confirmed the tip. One month later, law enforcement, using a confidential informant, conducted a controlled buy of methamphetamine and a sawed-off shotgun from Defendant. Based on this evidence, a search warrant was issued for Defendant's home.

For safety reasons, law enforcement planned to arrest Defendant away from his home. Officers with the Indiana State Police, using an armored vehicle, approached Defendant as he waited in his vehicle outside of an auto parts store. Defendant managed to evade the armored vehicle, leading officers on a high-speed chase through residential areas. The chase ended when Defendant crashed his vehicle, but not before more than thirty grams of methamphetamine were thrown from the vehicle.

After Defendant's arrest, Fort Wayne Police Department officers went to serve the search warrant. At the residence was Chandraa Coe ("Coe"), who officers knew to be Defendant's

methamphetamine supplier. Coe's vehicle was searched, uncovering hundreds of grams of methamphetamine, heroin, marijuana, four thousand dollars, and drug paraphernalia. During a custodial interview, Coe admitted that she and Defendant supplied each other with methamphetamine and heroin, and that she had supplied Defendant with four ounces of methamphetamine in the past month. She also told officers that Defendant regularly carried a firearm and that he had shot at five people.

The search of Defendant's home found a 9mm pistol, ammunition, drug paraphernalia, small amounts of marijuana and methamphetamine, and 142 grams of psychedelic mushrooms. The renters of the home confirmed that Defendant, who supplied the renters with methamphetamine, had moved in about two months before the search. The renters also confirmed that the firearm found in the home belonged to Defendant.

Defendant admitted to a smorgasbord of crimes during a post-arrest interview with officers. He admitted fleeing from officers and throwing methamphetamine from the vehicle during the flight. He admitted dealing methamphetamine and heroin and carrying a firearm during his sales. He admitted selling firearms, including the sawed-off shotgun sold during the controlled buy. He also admitted to shooting at four people, one for the venial sin of stealing a phone charger.

Defendant was indicted on five counts alleging drug and firearms offenses. He was initially appointed CJA counsel but, after eight months, fired that lawyer and hired private counsel Samuel Bolinger ("Bolinger"). Bolinger negotiated, and Defendant agreed to, a plea in August 2020 that would have had Defendant plead guilty to possession of an unregistered firearm, possession with intent to distribute methamphetamine, and possessing a firearm in furtherance of a drug crime in exchange for the dismissal of the remaining counts. (ECF No. 60). That plea set out the potential penalties, which included:

>for Count 2, imprisonment of not more than 10 years, a fine of not more than $10,000, or both such fine and imprisonment, a term of supervised release of not more than 3 years, and a $100 special assessment; for Count 4, imprisonment of not less than 5 years and not more than 40 years, a fine of not more than $5 million, or both such fine and imprisonment, a supervised release term of at least 4 years, and a $100 special assessment; and for Count 5, imprisonment of not less than 5 years and not more than life imprisonment, with this term of imprisonment running consecutively to any term of imprisonment imposed on any other count, a fine of not more than $250,000, or both such fine and imprisonment, a term of supervised release for not more than 5 years, and a $100 special assessment.

(*Id*. at 4–5). The Government also agreed to recommend the minimum of the applicable guideline range. (*Id*. at 5). Despite signing the plea agreement, Defendant got cold feet and backed out at his change of plea hearing.

After nearly a year of continuances, Defendant finally pleaded guilty to Counts 4 and 5, possession of methamphetamine with intent to distribute and possessing a firearm in furtherance of a drug crime, without the benefit of a plea agreement. During the plea hearing, the Government reviewed the plea discussions, noting the original failed agreement and then later negotiations. These included binding pleas, originally between 180 and 200 months. Bolinger pressed for reduced terms, first 156 months and then 120 months. AUSA Anthony Geller ("Geller") told Magistrate Judge Susan Collins that "the Government was not willing to reduce that binding range." (ECF No. 129 at 9–10).

Defendant was sworn and asked questions by Magistrate Judge Collins to ensure that he understood the proceedings. Defendant testified that he had a ninth-grade education and that he could "read, write, speak, and understand the English language." (*Id*. at 12). He confirmed that no one had made him any promises or assurances to get him to plead guilty. (*Id*. at 15-16). Defendant was told the possible sentences he could receive:

>The maximum possible penalty for your conviction of Count Four is imprisonment of not less than five years, and not more than 40 years, a fine of not more than five

3

> million dollars or both such fine and imprisonment, a term of supervised release of at least four years and a $100 special assessment.
>
> The maximum possible penalty for your conviction on Count Five is imprisonment of not less than five years, and not more than life, with a term of imprisonment running consecutively or after any term of imprisonment imposed on any other count, a fine of not more than $250,000 or both such fine and imprisonment, a term of supervised release of not more than five years, plus a $100 special assessment.

(*Id*. at 17). Defendant stated that he understood these possible penalties, and that he also understood that his sentence would be determined by the presiding judge after considering the advisory guideline range and the factors set forth in 18 U.S.C. § 3553(a). (*Id*. at 17–19). While Defendant rejected certain statements in the Government's recitation of the offense conduct, he admitted possessing methamphetamine with the intent to sell it and carrying a firearm to protect himself during drug trafficking. (*Id*. at 32–33).

A draft presentence investigation report was prepared following the guilty plea. The probation officer found that, based on the combined drug weight, Defendant's base offense level was 32. A total of four levels were added for maintaining a premises for the purpose of distributing a controlled substance and for obstruction of justice, the latter enhancement arising out of his flight from officers. After deducting three levels for acceptance of responsibility, the probation officer calculated the total offense level to be 33. The probation officer determined that Defendant's criminal history score was 17, placing him in category VI, despite eight of Defendant's adult convictions not being assessed criminal history points. Combining the offense level and the criminal history category, the probation officer concluded that Defendant's guideline imprisonment range on Count 4 was 235 to 293 months, with a consecutive statutory mandatory minimum of 60 months on Count 5.

Bolinger submitted a four-page objection to the draft presentence investigation report. As to the guideline calculation, Defendant objected to the drug weight calculation, the criminal history

4

points assigned to some of his past convictions, and the maintaining a premises enhancement. Defendant also levied several non-guideline objections, mostly related to the inclusion of non-pointed offenses in the presentence investigation report.

The Court held a telephonic hearing to address Defendant's objections. When asked for additional information or argument in support of the objections, Bolinger told the Court:

> I appreciate, Your Honor, this conference, because I was specifically instructed by my client to make those objections.
>
> When I discussed that with him that I needed support, he couldn't provide me anything other than this shouldn't be there, that shouldn't have been put in the report. I tried, because it was by telephone with him where he's at in Stryker to explain to him that I needed some type of support. I can't just make bold-faced objections. But he instructed me to go ahead and file. So that's why they're in the record, Your Honor.
>
> I don't have anything to add. I don't have any support. I do know that Ms. Klopfenstein spent a great deal of time when this report was prepared. She gave him every opportunity. He had no objections or problems then.

(ECF No. 127 at 3). With no evidentiary or legal support offered, the Court overruled all Defendant's objections to the presentence report.

At his sentencing hearing, Defendant again confirmed that he could read, write, and speak English. (ECF No. 130 at 4). Bolinger again objected to the drug quantity calculation, and it was again overruled. (*Id*. at 9). For mitigation purposes, Bolinger submitted seven support letters, two certificates showing completion of classes during Defendant's pretrial detention, and called four character witnesses. Bolinger also noted Defendant's difficult childhood and his addiction problems as mitigators. (*Id.* at 37–39).

After considering the aggravators and mitigators argued by counsel and those appearing in the presentence investigation report, the Court determined that a sentence of 324 months, consisting of 264 months on Count 4 and a consecutive 60 months on Count 5, was sufficient but

not greater than necessary to comply with the purposes of sentencing. The sentence was within the guideline range and was "the sentence the Court would have imposed even if it had ruled differently on the defendant's objections." (*Id*. at 46). The most important factor driving the sentence was the necessity to "protect the public from further crimes by the defendant." (*Id*.).

Defendant appealed his sentence. Attorney Thomas William Patton ("Patton") was appointed to represent Defendant on appeal. After seeking and receiving three extensions to file his appellant's brief, Patton moved to dismiss the appeal. The motion included a signed statement from Defendant that read: "I have been informed of my attorney's intention to move to dismiss my appeal. I concur in my attorney's decision and hereby waive all rights to object or raise any points on appeal." *United States v. Moriarity*, Cause No. 31-3107, DKT No. 20-2 (filed June 7, 2022).

## II. Legal Discussion

### A. *28 U.S.C. § 2255*

A § 2255 motion must be granted when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. But a § 2255 motion does not replace a direct appeal. *See Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997). Claims not raised on direct appeal are barred from collateral review unless upon review the petitioner establishes that a failure to consider the issue would amount to a fundamental miscarriage of justice. *See Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). Ineffective assistance of counsel claims will generally fit into this mold; they generally are not appropriate for review on direct appeal as they often attempt to rely on evidence outside the record. *See United States v. D'Iguillont*, 979 F.2d 612, 614 (7th Cir. 1992). Nonetheless, "[r]egardless of when it is made, because counsel is presumed effective, a party bears a heavy burden in making out a winning claim

based on ineffective assistance of counsel." *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995).

To make out a successful ineffective assistance of counsel claim, the petitioner must show that: (1) his counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance so prejudiced his defense that it deprived him of a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 688-94 (1984).

> With regard to the performance prong, [the] defendant must direct us to the specific acts or omissions which form the basis of his claim. The court must then determine whether, in light of all the circumstances, the alleged acts or omissions were outside the wide range of professionally competent assistance.

*Trevino*, 60 F.3d at 338. Moreover, claims that an attorney was ineffective necessarily involve inquiries into an attorney's trial strategies, which in turn requires facts which usually are not contained in the trial record. Thus, many trial determinations, like so many "other decisions that an attorney must make in the course of representation[, are] a matter of professional judgment." *United States v. Berkowitz*, 927 F.2d 1376, 1382 (7th Cir. 1991). Thus, the Court must resist a natural temptation to become a "Monday morning quarterback." *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

> It is not our task to call the plays as we think they should have been called. On the contrary, we must seek to evaluate the conduct from counsel's perspective at the time, and must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance.

*United States v. Ashimi*, 932 F.2d 643, 648 (7th Cir. 1991) (citations and quotations omitted).

Should the petitioner satisfy the performance prong, he must then fulfill the prejudice prong by demonstrating "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *United States v. Starnes*, 14 F.3d 1207, 1209-10 (7th Cir. 1994). "In making the determination whether the specified errors resulted

in the required prejudice, a court should presume . . . that the judge or jury acted according to law."

*Strickland*, 466 U.S. at 694. Further,

> [A] court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Id*. at 695-96.

**B.** ***Bolinger did not Render Ineffective Assistance of Counsel***

Defendant first asserts that Bolinger was "very ineffective" because he "never filed any motion to challenge the government evidence, or witness, or motion on the guidelines under the First Step Act, or to see if the drug amount was correct." (all sic) (ECF No. 131 at 4). In a later supplement, Defendant added complaints that Bolinger failed to investigate Defendant's mental health/developmental issues, failed to argue mitigating circumstances, and failed to object to Defendant's criminal history calculation. The Court finds no merit in these complaints.

Defendant's complaints about unfiled motions are non-starters. When a claim of ineffective assistance of counsel is based on a failure to present a motion, the petitioner is required to prove that the motion was meritorious. *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005). Defendant has not presented a legal argument that he suggests should have been used to attack the Government's evidence and witnesses, or the guideline calculations. Nor has he proven that a meritorious argument exists. Bolinger cannot be ineffective for failing to submit unidentified motions.

8

The claim that Bolinger failed to investigate Defendant's mental faculties has no more merit. "When the alleged deficiency is a failure to investigate, the movant must provide 'the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced.'" *Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004), quoting *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003). Defendant makes no such showing; he states only that a "study" would have shown a "clear and convincing diagnosis of developmental disability." (ECF No. 143 at 6). No evidence is provided to support this claim. The Court need not, and will not, take Defendant's word for it.

The remaining complaints all fail because Bolinger did address the issues with the Court. Bolinger filed a four-page written objection to the presentence investigation report objecting to both the drug quantity calculation and the criminal history score. (ECF No. 105). Bolinger raised the drug quantity issue again at sentencing and argued Defendant's rough childhood and substance abuse as mitigators. These same mitigators, plus Defendant's history of mental health struggles and lack of a high school diploma, were covered in detail in the presentence investigation report. (ECF No. 106 at 28–32). Bolinger may have presented the issues succinctly at the sentencing hearing but given the detail in the presentence investigation report and the written objection, the Court was well-informed of Defendant's potential mitigators. That Bolinger was unsuccessful in his mitigation arguments does not mean that he was ineffective in making them. *See*, *e.g.*, *Warner v. United States*, No. 07 C 1164, 2007 WL 2409823, at *3 (N.D. Ill. Aug. 21, 2007).

**C.**     ***Defendant has Failed to Identify a Deficiency in the Indictment***

Defendant next argues that the indictment was "legal insufficient to comply with the grand jury indictment clause of the 5th amendment." (ECF No. 131 at 8). Frankly, the Court has no idea what Defendant is talking about. In any event, his complaints fail.

Because Defendant pleaded guilty, he may not "transcend the four-corners of the indictment in order to demonstrate its insufficiency." *United States v. Di Fonzo*, 603 F.2d 1260, 1263 (7th Cir. 1979). Instead, "the sufficiency of an indictment may not be questioned in [a § 2255] proceeding unless it is so obviously defective as not to charge an offense under any reasonable construction." *Walker v. United States*, 218 F.2d 80, 81 (7th Cir. 1955).

An indictment satisfies the Fifth and Sixth Amendments' minimum requirements "if it (1) contains the elements of the offense charged; (2) sufficiently apprises the accused of what he must be prepared to meet; and (3) enables the accused to plead a judgment under the indictment as a bar to any subsequent prosecution for the same offense." *United States v. McComb*, 744 F.2d 555, 562 (7th Cir. 1984). The indictment here meets these requirements. (ECF No. 15).

D.  *Defendant's Plea was not Involuntary*

Defendant next argues that his plea was involuntary because "he was misled into this plea thinking he was only facing 10 years." (ECF No. 131 at 7). His supplement adds that he could not have understood the plea because of his "First Grade Level of reading and comprehension." (ECF No. 143). This argument fails for many reasons.

First, Defendant procedurally defaulted this claim by failing to raise it on direct appeal. *Ballinger v. United States*, 379 F.3d 427, 429 (7th Cir. 2004). Because he could have, but did not, object to the voluntariness of the plea on appeal, he cannot do so now.

But more importantly, his claims are contrary to the record. As for the potential penalties, Defendant was repeatedly, both orally and in writing, told what he faced. (ECF Nos. 5, 6, 17, 20, 55, 88). At his plea hearing he testified that he understood the possible penalties and that he had received no promises to induce him to plea. (ECF No. 129 at 15–16, 17–19). Indeed, AUSA Geller expressly stated that the Government *would not* agree to a 120-month sentence. (*Id*. at 9–10). There

10

is no way that Defendant could have believed he would receive a ten-year sentence unless he ignored every possible admonishment to the contrary *and* lied to the Court under oath.

The same is true for his new claim that he could not understand the plea. Defendant told the Court, under oath, that he had a ninth-grade education. (*Id*. at 12). He told the presentence investigation report writer that he had completed the ninth or tenth grade. (ECF No. 106 at 32). He repeatedly testified that he could read, write, speak, and understand English. (ECF No. 129 at 12; ECF No. 130 at 4). Defendant gave every indication, under oath, that he could understand the concept of a guilty plea.

A plea of guilty is a formal and solemn step, when the defendant admits his guilt under oath after assuring the court, also under oath, that he is ready, willing, and able to make that decision after consulting sufficiently with his lawyer and being informed about all matters that he needs to know about to make the decision. *See* Fed. R. Crim. P. 11(b). A defendant's motion to withdraw a plea, which is effectively what Defendant seeks, is unlikely to have merit if it seeks to dispute his sworn assurances to the court. *United States v. Collins*, 796 F.3d 829, 834 (7th Cir. 2015) (district court may presume truth of defendant's prior sworn statements in plea colloquy); see also *Mays*, 593 F.3d at 607 (answers to proper Rule 11 colloquy are presumed true, imposing heavy burden on defendant and leaving the "fair and just" escape hatch "narrow").

Simply put, there is nothing other than Defendant's belated say-so that would indicate he did not, or could not, understand his decision to plead guilty. Rather, every assurance to the Court indicated the contrary. Even if the issue were not procedurally defaulted, Defendant has failed to show his entitlement to relief.

### E.  *Appellate Counsel was not Ineffective*

Finally, Defendant alleges that Patton rendered Constitutionally ineffective appellate counsel. To make such a showing, Defendant must make the same two-part showing under *Strickland* required for trial counsel. *Mason v. Hanks*, 97 F.3d 887, 892 (7th Cir. 1996).

Under the *Strickland* performance prong, an appellate counsel's performance is constitutionally deficient if counsel fails to appeal an issue that is obvious and clearly stronger than the claims counsel raised on appeal. *Johnson v. Thurmer*, 624 F.3d 786, 793 (7th Cir. 2010). In this context, appellate counsel need not raise every non-frivolous claim, but should select among claims to maximize the likelihood of success on appeal. *See Smith v. Robbins*, 528 U.S. 259, 288 (2000); *McNary v. Lemke*, 708 F.3d 905, 920 (7th Cir. 2013). To establish the *Strickland* prejudice prong, Defendant must show that "there is a reasonable probability that the issues his appellate attorney did not raise would have altered the outcome of the appeal." *Shaw v. Wilson*, 721 F.3d 908, 918 (7th Cir. 2013).

Defendant identifies five arguments that he believes should have been raised. (ECF No. 143 at 2–3). Four of those relate to the plea and indictment which, as explained above, were and are meritless. Patton cannot have rendered ineffective assistance of counsel by failing to raise meritless issues on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983).

The fifth issue complains that Patton, rather than Defendant, drafted the statement that Defendant signed agreeing to dismiss the appeal. Defendant calls the idea that he drafted the statement "asinine." (ECF No. 143 at 3). Of course that idea is asinine, but it's equally true that no one thought Defendant drafted it in the first place. No competent lawyer allows his client to prepare legal filings, whether they be affidavits, discovery responses, or notices to a court. The lawyer drafts them, and the client signs on the dotted line. This is how the practice of law works.

Defendant further argues that he did not understand what it meant to dismiss his appeal. Even if one accepts that Defendant did not understand the effect of dismissing his appeal[1], his understanding is relevant only if there was a meritorious appeal to be pursued. As explained above, there was not. Patton did not render ineffective assistance of counsel when he chose, and Defendant agreed, to dismiss the appeal.

**F.**     ***Appointment of Counsel***

Separately, Defendant has requested the appointment of counsel to represent him in this § 2255 proceeding. Defendant has no constitutional right to counsel to help him bring a motion under 28 U.S.C. § 2255. *Rauter v. United States*, 871 F.2d 693, 695 (7th Cir. 1989). Instead, the right to counsel arises only when an evidentiary hearing is held on such a motion. *Id.*; Rule 8(c) of the Rules Governing Section 2255 Proceedings. For the reasons stated above, there is no basis to hold an evidentiary hearing on Defendant's petition. As a result, there is no right to counsel, and no counsel will be appointed.

**III.     Certificate of Appealability**

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rule 11 of Rules Governing Section 2255 Proceedings. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks omitted); *Barefoot v. Estelle*, 463 U.S. 880,

---

[1] For all the same reasons the Court rejects his argument that he did not understand his plea, it also rejects his argument that he did not understand his decision to dismiss his appeal.

13

893 & n.4 (1983). Because the Court finds that no reasonable jurist could conclude that Defendant is entitled to relief, no certificate of appealability will be issued.

## IV. Conclusion

For these reasons, Defendant's § 2255 motion (ECF No. 131) and his motion for appointment of counsel (ECF No. 132) are DENIED. No certificate of appealability will issue.

SO ORDERED on July 10, 2023.

                                     s/ *Holly A. Brady*
                                     JUDGE HOLLY A. BRADY
                                     UNITED STATES DISTRICT COURT